WILLIAM S. FREEMAN - #82002
wfreeman@aclunc.org
VASUDHA TALLA - #316219
vtalla@aclunc.org
JACOB SNOW - #270988
jsnow@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiff Andreas Gal

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREAS GAL,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 ET SEQ. AND THE PRIVACY ACT, 5 U.S.C. § 552a ET SEQ.**<br><br>**Privacy Act Case** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO._____

## INTRODUCTION

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and the Privacy Act, 5 U.S.C. § 552a *et seq.*, to enforce the right of the Plaintiff, Dr. Andreas Gal ("Plaintiff"), to disclosure of records concerning him maintained by the defendant agencies, U.S. Customs and Border Protection ("CBP") and U.S. Citizenship and Immigration Services ("USCIS") (collectively, "Defendants").

2. On November 29, 2018, Plaintiff Gal, an experienced technologist, innovator and authority on computer technology and digital privacy, was detained, harassed and threatened with arrest by CBP officers at San Francisco International Airport ("SFO") as he returned to the U.S. from an overseas business trip.

3. The conduct of CBP agents during the course of the November 29, 2018 encounter raises serious questions about Defendants' respect for the First Amendment rights of travelers and their right to be free from unfounded, threatening and coercive interrogation by government personnel.

4. Plaintiff subsequently filed a request under the Freedom of Information Act ("FOIA") and the Privacy Act (the "Request"), seeking from the government records that could reveal the reasons for his improper treatment, and specifically whether he was singled out for harassment on the basis of protected speech, and requesting the amendment or deletion of any records that were being improperly maintained regarding him.

5. More than four months after the Request was submitted, the government agencies to which it was sent have made no response whatsoever, other than to acknowledge receipt of the request. This lawsuit is brought to compel the government to comply with its statutory obligations under FOIA and the Privacy Act.

## PARTIES

6. Plaintiff Andreas Gal is a naturalized U.S. citizen and currently resides in San Mateo, California.

7. Defendant U.S. Customs and Border Protection is a component of the U.S. Department of Homeland Security ("DHS") and is a federal agency responsible for facilitating lawful international travel and trade. Defendant CBP is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 552a(1). The agency has its headquarters in Washington, D.C. and maintains a field office at 555 Battery Street, San Francisco, California.

8. Defendant U.S. Citizenship and Immigration Services is a component of DHS and is the federal agency responsible for administering the nation's immigration system. Defendant USCIS is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 552a(1). The agency has its headquarters in Washington, D.C. and maintains a field office at 444 Washington Street, San Francisco, California.

## JURISDICTION

9. This Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B), 552(a)(6)(C)(i), 552a(d), and 552a(g)(1). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

## VENUE AND INTRADISTRICT ASSIGNMENT

10. Venue is proper in this district pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552a(g)(5) and 28 U.S.C. §§ 1391(e) and 1402, because Plaintiff Gal resides in this District.

11. Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco Division of this Court is proper because Plaintiff resides in San Mateo County.

## FACTUAL ALLEGATIONS

**Plaintiff Gal was Unlawfully Detained and Interrogated at SFO**

12. Plaintiff Gal, a naturalized U.S. citizen, is an experienced technologist and innovator with an extensive background in computer science. He is the former Chief Technology Officer of Mozilla Corporation, which created the Firefox internet browser; the founder and Chief Executive Officer of Silk Labs, an embedded machine learning startup; and since 2018 an employee of Apple, Inc. He has written extensively and publicly about the need

3
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO._____

for encryption of digital communications and also about his political opposition to the current U.S. Administration.

13. Dr. Gal travels frequently outside the U.S., including extensive business travel. In order to facilitate his frequent travels, he applied for and was granted membership in Global Entry, a CBP program that allows expedited clearance for pre-approved, low-risk travelers upon arrival in the United States. The Global Entry Program is described at https://www.cbp.gov/travel/trusted-traveler-programs/global-entry.

14. Global Entry members enter the United States through automatic kiosks at select airports, including SFO, and, after presenting their screen-readable passport and having their fingerprints scanned for verification, typically proceed directly to baggage claim and the exit. Travelers must be pre-approved for Global Entry, and the approval process involves a rigorous background check and in-person interview before enrollment. Membership in Global Entry is a significant benefit to travelers, particularly those who travel abroad frequently for business or pleasure, as it speeds up considerably the process of re-entering the United States.

15. On November 29, 2018, Dr. Gal re-entered the United States from a business trip to Denmark and Sweden. Upon arriving at SFO on a nonstop flight from Copenhagen, Denmark, he proceeded to the Global Entry kiosk, where he scanned his U.S. passport and placed his fingers on the fingerprint scanner. Instead of being directed to proceed immediately to the baggage retrieval area and exit, he received a ticket marked "TTRT" and was directed to secondary inspection. "TTRT" appears to be a reference to a "Tactical Terrorism Response Team." Such teams are deployed at ports of entry and consist of CBP officers who are trained in counterterrorism response and supposedly utilize information derived from targeting "travelers suspected of having a nexus to terrorism."[1]

---

[1] Written testimony of DHS Office of Policy Acting Assistant Secretary for Border, Immigration and Trade Michael Dougherty, CBP Office of Field Operations Deputy Executive Assistant Commissioner John Wagner, and ICE Homeland Security Investigations Assistant Director for National Security Investigations Division Clark Settles for a House Committee on Homeland Security, Task Force on Denying Terrorist Entry into the United States hearing titled "Preventing Terrorists from Acquiring U.S. Visas," May 3, 2017, reproduced at:

16. By reason of his Global Entry membership, Dr. Gal had already undergone extensive vetting and been deemed by CBP to be a "low-risk traveler." At the time he was detained, no one explained to Dr. Gal why he was referred for secondary screening or what possible justification the government could have for detaining him under a program ostensibly designed to deter terrorism.

17. After Dr. Gal was referred to secondary screening, three armed CBP officers detained him for approximately an hour, during which time they interrogated him extensively concerning a number of subjects, including his work history with Mozilla and his prior international travel. The agents indicated their awareness of, and interest in, Dr. Gal's public stance on online privacy—speech that is protected by the First Amendment's guarantee of freedom of speech.

18. At the time he was detained, Dr. Gal had in his possession a cellular phone and laptop computer that were the property of his employer, Apple, Inc. and that contained proprietary and highly confidential information about Apple's technology, including versions of its operating software that had not yet been publicly released. Dr. Gal had signed, and believed he was contractually bound by, a non-disclosure agreement regarding those devices.

19. During their questioning, the CBP agents ordered Dr. Gal to give them the passwords and PIN-codes to his phone and laptop, so that they could access both devices and examine their contents. Dr. Gal explained that the devices contained proprietary information and that he was bound by a non-disclosure agreement with Apple, and he requested that he be allowed to speak to his employer and an attorney before providing any passwords, so that he could understand his obligations to the company in connection with the demands that CBP was making of him. The CBP agents refused his request to speak to the company or an attorney and instead threatened him by suggesting that his refusal to turn over his passwords and PIN-codes constituted a federal crime. The agents specifically referred Plaintiff Gal to 18 U.S.C. § 111,

---

https://www.dhs.gov/news/2017/05/03/written-testimony-cbp-ice-plcy-house-committee-homeland-security-task-force-denying.

1  which, among other things, prescribes imprisonment for up to 8 years for anyone who "forcibly
2  assaults, resists, opposes, impedes, intimidates, or interferes with" specified persons in the
3  performance of their official duties.  At no time did Dr. Gal engage in any of the activities
4  prohibited by 18 U.S.C. § 111.

5       20.    None of the CBP officers ever provided Dr. Gal with any information justifying
6  any possible suspicion that Mr. Gal had any connection to terrorism, nor did they attempt to
7  justify their threat of prosecution on the basis of alleged "forcible" interference with the
8  performance of their duties.

9       21.    Although the CBP officers did not succeed in coercing Dr. Gal to turn over his
10 passwords and PIN-codes, and eventually allowed Dr. Gal to leave the secondary inspection area
11 with his devices, their threatening conduct did achieve the desired result of intimidating Dr. Gal.
12 In addition, one of the agents confiscated Dr. Gal's Global Entry card and informed him that his
13 Global Entry membership would be revoked.  This revocation was clearly in retaliation for Dr.
14 Gal having requested to speak to his employer and an attorney before allowing the CBP agents to
15 access the highly confidential information contained on his devices.

16      22.    It appears that the actions of CBP in detaining, interrogating, and ultimately
17 threatening Dr. Gal with criminal prosecution may have been committed in retaliation for Dr.
18 Gal's expression of his views on digital privacy and encryption, and/or his outspoken opposition
19 to the policies of the current Administration.  If so, the conduct of CBP and its officers
20 constitutes a gross infringement on Dr. Gal's First Amendment rights and a serious threat to the
21 free-speech rights of all Americans.  Plaintiff has a right, and an urgent interest, in obtaining and
22 reviewing documents in the government's possession that may shed light on whether the actions
23 of CBP were, in fact, taken in retaliation for his protected expression.

24      **Plaintiff Submitted a FOIA and Privacy Act Request to CBP and USCIS But Those**
25                    **Agencies Have Failed to Produce Any Records**

26      23.    On January 16, 2019, Plaintiff Gal submitted a request under FOIA and the
27 Privacy Act to CBP and DHS by certified mail, return receipt requested, and by online request
28

form (together, the "Request"), to the headquarters of each agency in Washington, D.C., seeking disclosure and, where warranted, expungement of records relating to Dr. Gal and the Incident. A copy of the letter containing the Request (without attachments) is appended hereto as Exhibit 1.

24. In particular, the Request seeks records containing the following information:

    A. Any and all information maintained by and in the custody of the agencies that contain information pertaining to or referencing Dr. Gal; and

    B. Any and all records relating to the purported revocation of Dr. Gal's Global Entry status and privileges and the reasons for that purported revocation.

25. The Request also requests that the agencies expunge or amend any records pertaining to Dr. Gal that are not relevant and necessary to the purpose of the agencies; or are not maintained with such accuracy, relevance, timeless and completeness as is reasonably necessary to assure fairness to Dr. Gal; or that improperly relate to the exercise of rights guaranteed to Dr. Gal by the First Amendment activities.

26. CBP maintains a number of databases that contain traveler information, such as Passenger Name Records on every traveler; TECS border crossing and entry/exit logs; secondary inspection records; and "accounting disclosures" listing the other government agencies or third parties with which CBP has shared traveler records. The Request is broad enough to encompass all such records, and any other records of any kind that the Defendant agencies may have concerning Dr. Gal.

27. On January 16, 2019 and May 9, 2019, CBP acknowledged receipt of the Request by email and assigned tracking number CBP-2019-022802 to the Request.

28. On January 30, 2019, DHS acknowledged receipt of the Request by letter, assigning reference number 2019-HQFO-00323 to the Request, and informed Dr. Gal that it was transferring the Request to USCIS due to the subject matter of the Request.

29. On January 31, 2019, USCIS acknowledged receipt of the Request by letter and assigned control number NRC2019016475 to the Request.

30. More than 20 working days have passed since both Defendants CBP and USCIS received the Request.

31. As of the date of the filing of this Complaint, Plaintiff has not received any substantive response from either Defendant CBP or Defendant USCIS to the Request; nor a determination from either agency of whether the agency will comply with the Request; nor any documents from either agency that are responsive to the Request; nor any correspondence indicating when either agency might provide any documents.

32. Plaintiff has exhausted all applicable administrative remedies.

33. Defendants CBP and USCIS have wrongfully withheld the requested records from Plaintiff.

34. Because Defendants have so far failed to provide Plaintiff with any documents in response to the Request, Plaintiff is unable at this time to determine whether Defendants maintain records describing his exercise of rights protected by the First Amendment, in violation of 5 U.S.C. § 552a(e)(7); or whether Defendants maintain records concerning him without the accuracy, relevance, timeliness or completeness that is reasonably necessary to assure fairness to him, in violation of 5 U.S.C. §§ 552a(e)(1) and 552a(e)(5). Plaintiff reserves the right to amend this Complaint in the event that he later discovers that Defendants maintain such documents concerning him.

## FIRST CLAIM FOR RELIEF

### Violation of Freedom of Information Act For

### Wrongful Withholding of Agency Records

35. Plaintiff incorporates the above paragraphs as if fully set forth herein.

36. Defendants CBP and USCIS have wrongfully withheld agency records requested by Plaintiff under the FOIA and have failed to comply with the statutory time for the processing of FOIA requests.

37. Plaintiff has exhausted the applicable administrative remedies with respect to Defendants' wrongful withholding of the requested records.

38. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because Defendants continue to improperly withhold agency records in violation of FOIA.  Plaintiff will suffer irreparable injury from, and have no adequate legal remedy for, Defendants' illegal withholding of government documents pertaining to the subject of Plaintiff's Request.

## SECOND CLAIM FOR RELIEF

### Violation of Privacy Act For

### Wrongful Withholding of Agency Records

39. Plaintiff incorporates the above paragraphs as if fully set forth herein.

40. Pursuant to 5 U.S.C. § 552a(d)(1), Plaintiff has a legal right under the Privacy Act to gain access to any record or information pertaining to him which is maintained by Defendants.

41. Defendants have wrongfully prohibited Plaintiff from gaining access to such records.

42. Plaintiff has exhausted the applicable administrative remedies with respect to Defendants' wrongful withholding of the requested records.

43. Pursuant to 5 U.S.C. §§ 552(g)(1)(B) and 552a(g)(3)(A), Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because Defendants continue to improperly withhold agency records.  Plaintiff will suffer irreparable injury from, and have no adequate legal remedy for, Defendants' unlawful withholding of government documents pertaining to the subject of Plaintiff's Request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Order Defendants CBP and USCIS to promptly process and release to Plaintiff all responsive records;

B. Declare that Defendants CBP's and USCIS's failure to disclose the records requested by Plaintiffs is unlawful;

1      C.    Award Plaintiff his litigation costs and reasonable attorney's fees incurred in this
2  action; and
3      D.    Grant such other relief as the Court may deem just and proper.

5  Dated: June 3, 2019                  AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION OF NORTHERN CALIFORNIA

                                          By:   /s/ William S. Freeman
                                                William S. Freeman

                                          Attorneys for Plaintiff Andreas Gal

# Exhibit 1



**Northern California**

January 16, 2019

<u>Via Certified Mail, Return Receipt Requested</u>
<u>Via Online Request Form</u>

FOIA Officer
U.S. Customs and Border Protection
90 K Street, NW
9th Floor, Mail Stop 1181
Washington, DC 20229

Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW, STOP-0655
Washington, D.C. 20528-0655

**FOIA/Privacy Act Request for Records and Amendment/Expungement**

**Requestor: Andreas GAL**

To Whom It May Concern:

    This letter constitutes a request for the disclosure and, where warranted, expungement of records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5.U.S.C. § 552a, on behalf of Andreas Gal (the "Requestor") for all records pertaining to or referencing Mr. Gal. Mr. Gal is represented in this matter by the undersigned attorney. Please find attached Form 361, a Form G-28, Form G-639, and an Authorization for Release of Records, all signed by Mr. Gal.

    Mr. Gal requests, based on the Privacy Act, 5 U.S.C. §§ 552a(e)(1), (e)(5), (e)(7), (d)(1) and (d)(2), and FOIA, 5 U.S.C. § 552(3), that the U.S. Department of Homeland Security ("DHS"), including sub-agencies such as U.S. Customs & Border Protection ("CBP") and the Office of Biometric Identity Management ("OBIM") (together, the "Agencies") provide access to and disclose to Mr. Gal any and all records maintained by and in the custody of the Agencies that contain information pertaining to or referencing Mr. Gal. Mr. Gal specifically requests that the Agencies provide access to and disclose to Mr. Gal any and all records relating to the purported revocation of his Global Entry status and privileges and the reasons for that purported revocation.

    This request arises from CBP's invasive questioning of Mr. Gal on November 29, 2018 at the San Francisco International Airport upon Mr. Gal's return to the United States from an overseas trip. Mr. Gal possesses Global Entry status (Global Entry Program Membership

#981866207). At a Global Entry kiosk at the customs and border area, Mr. Gal received a ticket marked "TTRT." He was sent by CBP to an area adjacent to baggage claim, where he was interrogated by CBP officers as to his work history and his electronic devices. The officers asked Mr. Gal detailed questions about his work with Mozilla (a prior employer), and travel to Canada, indicating an awareness and interest in Mr. Gal's public stance on online privacy—activities protected by the First Amendment. CBP officers ordered Mr. Gal to turn over his passwords to his mobile phone and laptop. Mr. Gal advised the CBP officers that his electronic devices contained proprietary and highly-confidential information about his employer's technology (his current employer is Apple). Mr. Gal requested the opportunity to consult with his employer or an attorney prior to providing passwords to his devices because he had signed a non-disclosure agreement regarding those devices. The CBP officers refused to allow Mr. Gal the opportunity to consult with his employer or attorney. A CBP officer threatened Mr. Gal that his request to consult with his employer or an attorney prior to providing passwords and passcodes to his devices constituted a federal crime—a threat that had no basis in the facts or the law. While CBP officers eventually allowed Mr. Gal to leave with his devices, a CBP officer took Mr. Gal's Global Entry card and told him his privileges would be revoked. This purported revocation of Mr. Gal's Global Entry status appears to have been in retaliation for Mr. Gal's request to consult his employer or an attorney prior to providing passwords or passcodes to his devices. An officer provided Mr. Gal with a slip of paper on which was written "Port 2801" and "Supervisor Bowman," with the phone number, "650-877-4083."

To be clear, Mr. Gal's request includes, but is not limited to: (i) any such records maintained by the Agencies, whether or not they are in the Agencies' systems of records, as the term is defined in 5 U.S.C. § 552a(a)(5), and whether or not they are traceable by Mr. Gal's name or some other identifying characteristic, and (ii) any such records maintained by the Agencies from which records described above are retrievable through a "cross reference" search for files that mention Mr. Gal. *See MacPherson v. IRS*, 803 F.2d 479, 481 (9th Cir. 1986) ("Section (e)(7) requires only that the record be maintained by an agency that *keeps* a system of records, not that the record be a *part* of that system") (emphasis in original).

Based on Mr. Gal's account of his interaction with CBP officers on November 29, 2018, we have reason to believe that the Agencies maintain at least one record describing Mr. Gal and Mr. Gal's protected First Amendment activities. Any records resulting from Mr. Gal's interaction with CBP and maintained by the Agencies that are related to Mr. Gal are not based on allegations of criminal conduct, nor did CBP officers articulate any basis for reasonable suspicion of criminal conduct by Mr. Gal. Any such records that would tend to suggest Mr. Gal's actions had a potential nexus to criminal or terrorist activity would be inaccurate, irrelevant, and incomplete and unnecessary to any legitimate law enforcement purpose. Mr. Gal therefore requests that all such records be expunged or amended to omit all references to Mr. Gal, any identifying characteristics, and his activities, pursuant to 5 U.S.C. §§ 552a(e)(1), (e)(5), (e)(7), and (d)(2).

If this request is denied in whole or in part, Mr. Gal requests that you justify any refusals to expunge the records by reference to specific provisions of FOIA and/or the Privacy Act. Mr. Gal reserves the right to appeal a decision to deny his request.

*U.S. Customs and Border Protection & Department of Homeland Security*
*January 16, 2019*
*Page 2*

Please direct all correspondence regarding this request to:

William S. Freeman
Senior Counsel
American Civil Liberties Union of Northern California
39 Drumm Street
San Francisco, CA 94111
Email: wfreeman@aclunc.org

If you have any questions, I can be reached by phone at (415) 621-2493.

Sincerely,

*[signature]*

William S. Freeman
Senior Counsel

Encls.